### ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* GIBSON.

#### Opinion delivered March 24, 1900.

CARRIER—EXCESSIVE CHARGES—PENALTY.—Sand. & H. Dig. §§ 6254, 6256, making it unlawful for railroads to collect from the owner or consignee of freight a greater sum for transporting the same "than is specified in the bill of lading," and imposing a penalty for refusing to deliver freight upon payment or tender of the freight charges due, as shown by the bill of lading, does not apply to a company not a party to the bill of lading, which has not carried the goods under the bill of lading, and has neither authorized nor accepted it. (Page 37.)

Appeal from Hempstead Circuit Court.

RUFUS D. HEARN, Judge.

#### STATEMENT BY THE COURT.

The plaintiffs, Arthur A. and John S. Gibson, are merchants and dealers in drugs, wines and liquors at Hope, Arkansas. On the 14th day of September, 1895, they had four barrels of whiskey shipped to them from Louisville, Ky. The whiskey was consigned to A. A. Gibson & Son, Hope, Arkansas, via Little Rock, but the bill of lading only stated the freight charges from Louisville to Little Rock, and guarantied the rate between those points to be $1.20 per barrel, weight of 4 barrels 1,600 pounds, subject to correction.

The whiskey arrived at Little Rock over the Little Rock & Memphis Railroad, and soon afterwards the agent of that

line notified Gibson & Son, by letter, of that fact, stating that the charges to Little Rock were $6, and that the Iron Mountain road would not accept freight unless charges to Little Rock were prepaid. Gibson replied that the guarantied rate, as shown by the bill of lading, was $1.20 per barrel to Little Rock, and offered to remit at that rate. To this letter the agent of the Little Rock & Memphis Company replied, asking him to send the bill of lading, and saying he would endeavor to adjust the same. Gibson did not do this, but carried the bill of lading to the local agent of the defendant company at Hope, told him of the shipment, that the goods were at Little Rock, and tendered him $12.64, that being at the rate guarantied from Louisville to Little Rock on 1,600 pounds, with the addition of the local rate of the defendant company from Little Rock to Hope. The agent declined to accept it, but said that he would telegraph the agent of his company at Little Rock. Gibson did not at this time inform the local agent at Hope that the Memphis & Little Rock Company had demanded a higher freight charge than specified in the bill of lading, and the agent at Hope did not know of the controversy on that point. So, without referring to that controversy, of which he was ignorant, he telegraphed to the agent of his company as follows: "A. A. Gibson & Son have four barrels whiskey in L. R. & M. frt. depot. They make tender of the freight charges here. Please wire amount of prepay, and will collect it here. The agent of the L. R. & M. road writes me that you request prepayment. Please answer quick." On the receipt of this telegram from the agent at Hope, the agent at Little Rock, without replying, accepted the shipment from the Little Rock & Memphis Railroad, and paid the $6 charges demanded by that company, and forwarded the whiskey, without knowing that the $6 was more than the bill of lading specified. When the whiskey arrived at Hope, the agent then saw from the way bill that the back charges exceeded those named in the bill of lading, and this was the first information he or any agent of defendant had of that fact. After the whiskey arrived, Gibson was informed that the goods weighed 1,770 pounds instead of 1,600; that the back charges paid were greater

than those named in the bill of lading, and that the total charges due were $14.68. He refused to pay, but tendered $13.50, that being according to the rate named in the bill of lading with weights corrected, and with local rate from Little Rock to Hope added. The company at first refused to accept, but, after holding same for over a month, delivered the whisky to Gibson, and received from him the $13.50 in satisfaction of the freight.

The plaintiffs afterwards brought this suit against the Iron Mountain Company to recover the penalties imposed by the statute against railroad companies for refusing to deliver goods to the consignee after payment or tender of the freight charges due as shown by the bill of lading.

There was a verdict and judgment in favor of plaintiff for the sum of $742.50, from which judgment the company appealed.

*J. E. Williams* and *Dodge & Johnson*, for appellant.

This being an interstate shipment, it is not governed by the state statute. 158 U. S. 98; 34 S. W. 145; 21 S. W. 554; 45 S. W. 814; 43 S. W. 609; 46 S. W. 633; 74 Fed. 981; 58 Fed. 858; 41 Fed. 592. The statute, being penal, must be strictly construed. 6 Ark. 131; 13 Ark. 405; 43 Ark. 413; 59 Ark. 341; 56 Ark. 45; 40 Ark. 97; 59 Ark. 344; 22 S. W. 1014. Where the bill of lading does not show all the charges that are legally demandable by the carrier, this court has held the penalty not recoverable. 56 Ark. 430. The appellant, being only a connecting carrier, and not a party to the original contract, was entitled to hold the goods for the charges paid by it. 56 Ark. 439; 22 S. W. 1014; 21 S. W. 554; 84 Tex. 194; 21 S. E. 995; 63 Mo. App. 145; 69 N. Y. 230; 25 Wis. 241; 27 Mo. 17. The court erred in refusing to give the instructions asked by appellant under authority of 56 Ark. 439. It was also error to refuse the 8th instruction asked by appellant, telling the jury that, if the bill of lading did not show all the charges that were legally demandable, the the statutory penalty was not recoverable. 41 Fed. 593. The interstate-commerce law governed the rates chargeable in this case, and, the charges being in conformity to that schedule, no

other rate would have been legal, even if agreed upon.   43 S.
W. 609; 40 S. W. 899; 158 U. S. 98.   The facts are such as
to show that appellant was not a party to the bill of lading, and
that there was really a new contract of carriage from Little
Rock to Hope.   In such a case it is not within the terms
of the statute.   74 Fed. 858; 63 Mo. App. 145;  55 Am. &
Eng. R. Cas. 442, 414, 416;  69 N. Y. 230;  25 Wis. 241;
19 S. W. 470.

   *Jas. H. McCollum,* for appellees.

   Appellant's act was a plain violation of the statute.   Sand.
& H. Dig., § 6256.   The application of this statute is not
limited to companies issuing the bill of lading, but reaches
alike to all companies refusing to deliver the goods to the con-
signees upon payment, or tender of payment, of freight due
under the bill of lading, whether issued by the offending com-
pany or not.   49 Ark. 291;  75 Tex. 572;  46 S. W. 33.
Notice to the appellant's agent of the provisions of the bill of
lading was notice to appellant.   Clark, Corp. 502;  Wade,
Notice, § 672; 1 Ell. Railroads, § 226; 24 Am. St. Rep. 722; 29
Ark. 99; 52 Ark. 11.   It was the duty of appellant to deliver
the goods in accordance with the bill of lading.   64 Ark. 169;
36 S. W. 183.   By accepting the goods for transportation un-
der the bill of lading, with notice of its terms, appellant be-
came bound thereby.   51 Am. St. Rep. 155;  61 *ib.* 679;  63
*ib.* 856;  23 S. W. 1020;  8 Am. & Eng. Enc. Law, §§ 970–1.
Connecting carriers which have not agreed upon and filed the
schedule of rates with the Interstate Commerce Commission, in
compliance with the act, are not exposed to its penalties, or
controlled by it.   23 S. W. 732;  158 U. S. 98.

   RIDDICK, J., (after stating the facts.)   We are of the
opinion that the judgment against the railway company for a
penalty cannot be sustained under the facts of this case.   The
statute imposing a penalty upon railway companies for refusing
to deliver freight upon payment or tender of the freight charges
due, as shown by the bill of lading, does not apply to a compa-
ny not a party to the bill of lading, which has not carried the
goods under the bill of lading, and has neither authorized nor

accepted it.   It applies only to railway companies "that are bound by the bill of lading, either as having made, author: ized or accepted it "   *Loewenberg* v. *Railway Co.*, 56 Ark. 439; *Fordyce* v. *Johnson*, 56 Ark. 430.

The language of the statute clearly shows this to be its meaning; for it makes it unlawful for any railroad in this state to collect from any owner or consignee of freight a greater sum for transporting the same "than is specified in the bill of lading." Sand. & H. Dig., § 6254.   And it is evident from this language that the act applies only to a company which carries the goods under the bill of lading, and afterwards endeavors to impose greater charges than are authorized by the contract.   Some company carrying the goods under the bill of lading, and whose charges are regulated by it, must refuse to deliver the goods, before the statute applies.   If the goods in reaching their destination pass beyond the point named in the bill of lading, and to which the charges are specified, into the possession of a carrier not acting under the bill of lading, and whose charges are not governed by it, the statute does not apply; for the language of the act does not include such a carrier, and the act, being penal, must be strictly enforced, and cannot be extended by implication.

If the act applied to the defendant company in this case, and if it could collect only what was shown in the bill of lading, the result would be that it would get nothing for hauling the whiskey from Little Rock to Hope, for the bill of lading specifies the freight charges only to Little Rock.   It is admitted that the defendant company had the right to charge its usual local freight rates for transporting the whiskey from Little Rock to Hope in addition to the charges specified in the bill of lading, and this, of itself, shows that this case is not within the statute; for, to quote the language of the court in *Fordyce* v. *Johnson*, the penalty cannot be recovered "when the bill of lading does not represent the amount of charges that are legally demandable by the carrier to whom the tender is made."

If the defendant company, without right, paid excessive charges to another carrier, and then, in order to compel plaintiffs to pay such charges, withheld their goods, it may be that it thereby subjected itself to an action for damages, but that is

a different matter.   In order  to  recover a penalty, plaintiffs must bring their case within the statute by  showing  that  the defendant carried the whiskey under a bill of lading specifying its charges for such carriage, and then refused to deliver  upon the payment or tender of the charges named.   The complaint shows on its face that such was not the case; for it states that the whiskey was shipped from Louisville to Little Rock  under a bill of lading  guarantying the rate to the latter point, and then shipped over defendant's line.

There are other points raised which would probably be equally conclusive against the right of plaintiffs to recover, but we find it unnecessary to discuss them.   For the reasons stated, the judgment will be reversed, and the case dismissed.